## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2020, 11:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Tyler G. Miller
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Justin E. Endris
Katelyn M. Hines
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William K. Floyd,
*Appellant-Defendant,*

v.

Haus Roofing, LLC,
*Appellee-Plaintiff.*

October 30, 2020

Court of Appeals Case No.
20A-MI-70

Appeal from the Clark Circuit Court

The Honorable Steven M. Fleece

Trial Court Cause No.
10C01-1811-MI-266

**Tavitas, Judge.**

# Case Summary

William Floyd appeals the trial court's judgment for Haus Roofing, LLC ("Haus"). We affirm.

# Issues

Floyd raises five issues, which we consolidate and restate as:

I.  Whether the trial court properly found that Floyd waived his right to a jury trial.

II.  Whether the trial court erred by failing to address Floyd's arguments regarding the Deceptive Consumer Sales Act, the Home Improvement Contracts Act, and the Home Improvement Fraud Act.

III.  Whether the trial court properly found that Floyd breached the contract with Haus.

IV.  Whether the trial court properly granted attorney fees to Haus.

# Facts

In May 2018, a tree fell on the back section of roof on Floyd's Clarksville residence, causing damage. Floyd contacted Haus, a roofing company located in Clarksville, to make the repairs. On June 16, 2018, Floyd and Haus entered into a written contract that required Haus to perform the following:

1)  Remove and rebuild back section of roof, trusses, wallplate, resheet OSK 7/16" sheeting, fly rafters

2) Install new soffits, metal, gutters

3) Clean up and haul all debris

Ex. Vol. IV p. 20. The total contract price was $23,640.00, and a $5,000.00 down payment was required.

[4] Floyd did not pay the $5,000.00 down payment; however, Haus began making the repairs on June 17, 2018. After Haus began making the repairs, Haus discovered additional water damage that required repairs. Haus discussed the additional damages with Floyd and prepared a supplemental contract regarding the additional repairs at a cost of $8,110.00 and, thus, a total contract price of $31,750.00. Floyd did not sign the supplemental contract, but he testified that he orally "accepted it." Tr. Vol. III p. 57. Haus completed the repair work on June 22, 2018, and Floyd did not raise any concerns with Haus' performance at that time.

[5] Beginning in early July 2018, Floyd's insurance company sent multiple checks to Floyd totaling more than $34,000.00 for his damages. On July 6, 2018, Floyd paid Haus $5,000.00, and Floyd told Haus that he had not received the remainder of the insurance payment. Haus made numerous calls to the insurance company and discovered in August 2018 that Floyd was already paid by the insurance company. When Haus confronted Floyd, Floyd claimed, for

the first time, that Haus had failed to obtain a building permit to perform the work.[1]

[6]     Haus obtained the building permit and hired Nathan Grimes, a structural engineer, to inspect the repairs to Floyd's residence. Grimes issued a report and recommended some additional repairs. According to Haus, the repairs recommended by Grimes would entail "a couple of hours" to complete.[2] Tr. Vol. II p. 73. Floyd, however, refused to allow Haus or another contractor hired by Haus to perform the repairs. In late September 2018, Floyd, for the first time, argued that Haus performed the repairs improperly, claiming Haus did not install pre-engineered, pre-manufactured trusses.

[7]     Haus filed a complaint against Floyd in November 2018 alleging: (1) breach of contract; (2) unjust enrichment; and (3) "General Causation and Damages." Appellant's App. Vol. II p. 57. Haus requested damages and attorney fees. Haus' complaint also included a demand for a jury trial. In response, Floyd filed an answer and counterclaim. In the counterclaim, Floyd alleged that: (1) Haus breached the contract by failing to install trusses in Floyd's residence; (2) Haus "failed to perform various aspects under the parties['] contract"; (3) Haus'

---

[1] The Building Commissioner for the Town of Clarksville testified that a permit was required for the replacement of rafters and trusses, but a permit is not required to "re-roof a house or to do a roofing on a house, generally[.]" Tr. Vol. II p. 140.

[2] The Building Commissioner testified that the repairs would have been "easy to accomplish" and would have cost $750.00 to $1,000.00 in materials. Tr. Vol. II p. 148. David Brewer, prior Building Commissioner of New Albany, testified that the repairs would cost about $2,300.00 to complete, which included materials and labor. *Id.* at 190.

work "caused significant damage" to Floyd's property; (4) Haus failed to obtain the necessary permits; and (5) a structural engineer discovered defects in the work during an investigation. *Id.* at 67. Floyd additionally alleged that Haus committed slander of title by filing a mechanic's lien against Floyd's property. In February, Floyd filed a motion to amend his answer, which the trial court granted.[3]

[8] On May 29, 2019, at a pretrial conference, Haus waived its prior request for a jury trial and agreed to a bench trial. Haus contends that Floyd agreed to the bench trial, but Floyd contests that assertion. The trial court, however, set the matter for a bench trial on August 5 and 6, 2019.

[9] At the scheduled final pretrial conference on July 31, 2019, Floyd requested a jury trial. The trial court continued the bench trial and entered a pretrial order that, in part, allowed briefing on the jury trial/bench trial issue. The parties filed pleadings in support of their arguments regarding Floyd's request for a jury trial. On August 23, 2019, however, the trial court entered an order finding that "Floyd consented to the Haus' withdrawal of a jury trial at the pretrial conference on May 29, 2019." Appellant's App. Vol. II p. 102. The trial court further found that: "Floyd has waived any argument, and is estopped from asserting any argument, that he did not consent to withdrawal of the jury trial at, the pretrial conference due to his acquiescence to setting a two (2) day bench

---

[3] This motion, the amended answer, and Haus' answer to the amended answer and counterclaim were not included in either Appellant's Appendix or Appellee's Appendix.

trial date and failure to object to the withdrawal." *Id.* at 102-03. The trial court then set the matter for a bench trial on November 25 and 26, 2019.

[10] On October 16, 2019, Floyd filed a motion to amend his answer and counterclaim for a second time. Floyd sought to add a request "that the Plaintiff's Complaint be denied for violating I.C. 24-5-11.9 [the Deceptive Consumer Sales Act], I.C. 24-5-0.5-3. [the Home Improvement Contracts Act], and I.C. 35-43-6-12 [the Home Improvement Fraud Act]." *Id.* at 112. Haus objected to Floyd's motion. On October 16, 2019, Floyd also filed a motion to dismiss Haus' complaint pursuant to the same statutes. During a final pretrial conference on November 8, 2019, the trial court denied Floyd's motion to amend his answer and counterclaim. Tr. Vol. II p. 8. The trial court also denied Floyd's motion to dismiss. *Id.* at 15.

[11] A bench trial was held on November 25 and 26, 2019, and the trial court entered findings of fact and conclusions thereon finding for Haus and against Floyd. The trial court found that Floyd, not Haus, breached the contract. Specifically, the trial court found that: (1) Floyd's testimony was "not believable"; (2) the contract did not call for "pre-engineered or pre-manufactured trusses"; and (3) Floyd did not permit Haus "to repair any alleged defects from the permit process." Appellant's App. Vol. II pp. 20, 22, 24. The trial court also found that Haus was entitled to attorney fees pursuant to Indiana Code Section 34-52-1-1(b). Floyd now appeals.

# Analysis

## *I. Jury Trial Waiver*

[12] Floyd argues that the trial court erred by denying Floyd a jury trial. After a hearing and briefing, the trial court entered findings of fact and conclusions thereon on August 23, 2019, finding that Floyd consented to the withdrawal of the request for a jury trial and that Floyd waived any argument that he did not consent.

[13] Because neither party filed a written request for findings of fact and conclusions thereon regarding this issue pursuant to Indiana Trial Rule 52, the trial court's findings of fact are controlling only as to issues they cover. *In re Adoption of I.B.*, 32 N.E.3d 1164, 1169 (Ind. 2015). "We limit our review of those matters to whether the evidence supports the findings and then whether the findings support the judgment, reversing the findings only if they are clearly erroneous." *Id.* "On all other matters, the general-judgment standard applies, and we will affirm on any legal theory supported by the evidence." *Id.* The trial court's conclusions of law and any constitutional challenges are reviewed de novo. *Id.*

[14] Indiana Trial Rule 38(B) provides:

> Any party may demand a trial by jury of any issue triable of right by a jury by filing with the court and serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than ten (10) days after the first responsive pleading to the complaint, or to a counterclaim, crossclaim or other claim if one properly is pleaded; and if no responsive pleading is filed or required, within

ten (10) days after the time such pleading otherwise would have been required. Such demand is sufficient if indorsed upon a pleading of a party filed within such time.

Further, "if a proper request for a trial by jury upon issues triable by jury as of right on his behalf is made by any party, such request shall be deemed to have been made on behalf of all parties entitled to a jury trial upon such issues." Ind. Trial Rule 38(C).

[15] Under Indiana Trial Rule 38(D), "[a] demand for trial by jury made as herein provided may not be withdrawn without the consent of the other party or parties." Indiana Trial Rule 39(A)(1) is also relevant here and provides:

> Issues upon which a jury trial is so demanded shall be tried by jury, subject to the following exceptions:
>
> (1) If the parties or their attorneys of record, by *written stipulation filed with the court or by oral stipulation made in open court and entered in the record*, consent to trial by the court sitting without a jury upon any or all issues triable by jury as of right and so demanded, the court shall try those issues without a jury. The stipulation shall be effective only if filed or made in court before evidence is admitted at the trial or at such later time as the court, in its discretion, may allow.

(emphasis added).

[16] In its complaint, Haus requested a jury trial. On May 29, 2019, a pretrial conference was held, but the conference was not recorded. According to Haus, at the pretrial conference, Haus waived its prior request for a jury trial and

agreed to a bench trial. Haus contends that "Floyd consented to the withdrawal of the jury trial request at that time." Appellee's Br. p. 35. Floyd, on the other hand, contends that he "did not agree to convert the jury trial into a bench trial, either orally or in writing." Appellant's Br. pp. 37-38.

[17] The chronological case summary indicates that, after the pretrial conference: (1) the parties submitted witness and exhibit lists; (2) on July 9, 2019, the trial court set the matter for a bench trial on August 5 and 6, 2019; and (3) Haus issued subpoenas to its witnesses for the bench trial. Floyd raised no issue regarding the bench trial until the final pretrial conference on July 31, 2019, only a few days before the trial was scheduled to occur. Although this pretrial conference was held "on [the] record," we were not provided with a transcript of the hearing. Appellant's App. Vol. II p. 6. The trial court continued the bench trial and allowed briefing by the parties on the jury trial issue.

[18] After briefing by the parties, on August 23, 2019, the trial court entered an order finding that "Floyd consented to the Haus' withdrawal of a jury trial at the pretrial conference on May 29, 2019." *Id.* at 102. The trial court further found that "Floyd has waived any argument, and is estopped from asserting any argument, that he did not consent to withdrawal of the jury trial at, the pretrial conference due to his acquiescence to setting a two (2) day bench trial date and failure to object to the withdrawal." *Id.* at 102-03.

[19] Floyd has failed to establish that the trial court's ruling is clearly erroneous. It is undisputed, however, that there was no "written stipulation filed with the

court or by oral stipulation made in open court and entered in the record" regarding the withdrawal of the jury trial demand as required by Trial Rule 39. Under these circumstances, we find *Indiana Farm Bureau Co-op. Ass'n, Inc. v. Ennis*, 574 N.E.2d 322, 323 (Ind. Ct. App. 1991), persuasive with respect to the estoppel doctrine.

[20] In *Ennis*, Farm Bureau contended that the trial court erred by conducting a bench trial after Ennis made a demand for a jury trial with its answer. Ennis argued that Farm Bureau waived the right to a jury trial because the parties stipulated to a bench trial during a pretrial conference. Farm Bureau argued that the stipulation at the pretrial conference did not satisfy Indiana Trial Rule 39. We noted that "[e]stoppel arises when a party's words or actions mislead another party and such other party is induced to act in a way as to place him at a disadvantage." *Ennis*, 574 N.E.2d at 323. We concluded that, "[a]lthough the pre-trial oral stipulation does not satisfy the technical requirements of T.R. 39(A) because it was not made in open court, we find that [Farm Bureau] is estopped from seeking a jury trial." *Id.* We noted that "Ennis [ ] relied upon [Farm Bureau's] waiver and failed to file a written stipulation or enter the stipulation on the record during the trial." *Id.* Accordingly, we refused "to allow [Farm Bureau] to obtain a new trial simply because the waiver was not repeated in open court." *Id.*

[21] Similarly, here, the trial court found that "Floyd has waived any argument, and is estopped from asserting any argument, that he did not consent to withdrawal of the jury trial at, the pretrial conference due to his acquiescence to setting a

two (2) day bench trial date and failure to object to the withdrawal."
Appellant's App. Vol. II pp. 102-03. Haus relied upon Floyd's consent given at the May pretrial conference and did not file a written stipulation; the trial court set the matter for a bench trial and established deadlines, which the parties then followed; and Floyd did not raise the issue of a jury trial until a few days before the scheduled bench trial. Under these circumstances, the trial court's conclusion that Floyd waived any argument and was estopped from asserting any argument that he did not consent to the bench trial is not clearly erroneous.

## II. *Deceptive Consumer Sales Act, Home Improvement Contracts Act, and Home Improvement Fraud Act*

[22]     Much of Appellant's brief is devoted to arguments that Haus violated the Deceptive Consumer Sales Act (Indiana Code Chapter 24-5-0.5); the Home Improvement Contracts Act (Indiana Code Chapter 24-5-11); and the Home Improvement Fraud Act (Indiana Code Chapter 35-43-6). Floyd improperly argues that the trial court found the statutes "inapplicable to the facts of this case." Appellant's Br. p. 20. Rather, the record shows that, on October 16, 2019, Floyd filed a second motion to amend his counterclaim. Floyd added a request "that the Plaintiff's Complaint be denied for violating I.C. 24-5-11.9, I.C. 24-5-0.5-3., and I.C. 35-43-6-12." Appellant's App. Vol. II p. 112. Haus objected to Floyd's motion, and the trial court denied Floyd's motion to amend his answer and counterclaim. Floyd does not appeal the trial court's denial of his second motion to amend his answer and counterclaim. Accordingly, Floyd did not have a counterclaim against Haus related to the Deceptive Consumer

Act, the Home Improvement Contracts Act, or the Home Improvement Fraud Act. As a result, the trial court did not address the statutes. Likewise, we do not address the applicability of these statutes to this case. *See, e.g., In re Scott David Hurwich 1986 Irrevocable Tr.*, 59 N.E.3d 977, 980 (Ind. Ct. App. 2016) (holding that appellant's claim, which was presented in a motion to dismiss, was waived where she made no argument regarding the claim on appeal); *see* Ind. Appellate Rule 46(A)(8) (requiring a cogent argument on appeal).

### III. *Breach of Contract*

[23] Next, Floyd argues that the trial court erred by finding Floyd breached the contract with Haus. After the November 2019 bench trial, the trial court issued findings of fact and conclusions thereon pursuant to a request under Indiana Trial Rule 52(A).[4] Accordingly, we apply a two-tiered review. *Wysocki v. Johnson*, 18 N.E.3d 600, 603 (Ind. 2014). We "affirm when the evidence supports the findings, and when the findings support the judgment." *Id.* We do not "set aside the findings or judgment unless [they are] clearly erroneous," and we must give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* (citing Ind. Trial Rule 52(A)). "Findings of

---

[4] In his reply brief, Floyd argues that the trial court adopted Haus' proposed findings of fact and conclusions thereon verbatim. "[W]hen a trial court accepts verbatim a party's proposed findings of fact and conclusions thereon, that practice 'weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court.'" *Staff Source, LLC v. Wallace*, 143 N.E.3d 996, 1009 (Ind. Ct. App. 2020) (quoting *Cty. of Lake v. Pahl*, 28 N.E.3d 1092, 1100 (Ind. Ct. App. 2015), *trans. denied*). "It is not uncommon or per se improper for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party." *Id.* "Although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous." *Id.*

fact are clearly erroneous only when they have no factual support in the record." *Id.* "[A] judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Id.* at 604.

[24] "The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993). Floyd argues that Haus was the first to materially breach the contract. "When one party to a contract commits the first material breach of that contract, it cannot seek to enforce the provisions of the contract against the other party if that other party breaches the contract at a later date." *Hussain v. Salin Bank & Tr. Co.*, 143 N.E.3d 322, 331 (Ind. Ct. App. 2020), *trans. denied.* Accordingly, we must first determine whether Haus breached the contract and, second, whether any breach was material.

[25] "Whether a breach is material is generally a question of fact to be decided by the trier of fact." *State v. Int'l Bus. Machines Corp.*, 51 N.E.3d 150, 158 (Ind. 2016). "A material breach is often described as one that goes to the 'heart of the contract.'" *Id.* at 158-59 (quoting *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007)). When determining whether a breach is material, Indiana courts generally apply the factors articulated in the Restatement (Second) of Contracts § 241 (1981):

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id.* at 160 (citing *Collins*, 871 N.E.2d at 375).

### *A. Permit*

[26] Floyd argues that Haus breached the contract by failing to obtain a building permit. The contract, however, does not mention whether either party was required to obtain the necessary permits. In fact, the contract does not mention permits at all. Floyd fails to explain how the lack of a permit was a breach where the contract did not specifically mention the requirement of a permit. Accordingly, we cannot say that Haus breached the contract by failing to obtain a permit.

[27] Moreover, when the necessity of a permit was brought to Haus' attention, Haus cured his failure and obtained such a permit. Floyd was not deprived of a benefit that he reasonably expected. Accordingly, even if Haus' failure to

obtain a permit was a breach of the contract, we cannot say that Haus' breach was material. "The facts of the case determine whether a total breach exists, and whether the breach is material is a question of fact for the factfinder." *Indiana Hotel Equities, LLC v. Indianapolis Airport Auth.*, 122 N.E.3d 901, 908 (Ind. Ct. App. 2019). "We will not reweigh the evidence in reviewing the trial court's findings of fact." *Id.* The trial court found that Floyd, not Haus, breached the contract. With respect to the permit issue, we cannot say that the trial court's finding is clearly erroneous.

### B. Repairs Identified by Grimes

[28] Floyd argues that Haus breached the contract by failing to perform the repairs properly, as shown in Grimes' report. Haus presented evidence that the repairs recommended in Grimes' report were minor and that Haus had repeatedly offered to cure the defects. Floyd, however, has refused to allow Haus to make the repairs. Given Haus' repeated attempts to make the minor repairs recommended by Grimes, the trial court found that Floyd was not entitled to "offset amounts owed after he denied such opportunity." Appellant's App. Vol. II p. 24. Floyd cannot now argue Haus breached the contract by failing to perform the repairs Floyd prevented.

[29] Even if Haus' failure to perform the work properly, as identified in the Grimes' report was a breach, we cannot say that the breach was material. One of the factors in determining whether a breach is material is the "likelihood that the party failing to perform . . . will cure his failure, taking account of all the circumstances including any reasonable assurances." *Int'l Bus. Machines Corp.*,

51 N.E.3d at 160. Given that Haus has repeatedly offered to cure the problems identified by Grimes, those minor repairs did not amount to a material breach of the contract. Again, the trial court found that Floyd, not Haus, breached the contract. With respect to the issues identified in Grimes' report, we cannot say that the trial court's finding is clearly erroneous. *See Indiana Hotel Equities, LLC*, 122 N.E.3d at 908 (noting that whether a breach is material is a question of fact for the factfinder and that we will not reweigh the evidence).

## C. Trusses

[30] Floyd also argues that Haus was the first to breach the contract by failing to install pre-engineered, pre-manufactured trusses on the house. In interpreting a contract, we "determine the intent of the parties at the time that they made the agreement." *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 752 (Ind. 2018). "We start with the contract language to determine whether it is ambiguous." *Id.* "If the language is unambiguous, we give it its plain and ordinary meaning in view of the whole contract, without substitution or addition." *Id.* "The terms of a contract are ambiguous only when reasonably intelligent persons would honestly differ as to the meaning of those terms." *Perrill v. Perrill*, 126 N.E.3d 834, 841 (Ind. Ct. App. 2019), *trans. denied*. "Only 'reasonable' certainty is necessary; 'absolute certainty in all terms is not required.'" *Allen v. Clarian Health Partners, Inc.,* 980 N.E.2d 306, 310 (Ind. 2012). Instead, "[o]nly essential terms need to be included to render a contract enforceable." *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009).

[31] After the back section of roof of Floyd's house was damaged by a tree, Floyd and Haus entered into a contract that provided Haus would "[r]emove and rebuild back section of roof, trusses, wallplate, resheet OSK 7/16" sheeting, fly rafters." Ex. Vol. IV p. 20. It is undisputed that Floyd's residence contained "stick built rafters" rather than "trusses." Tr. Vol. II p. 121. During the bench trial, Jimmy Haus testified that the terms "truss" and "rafter" are often interchanged with one another and that the term "truss" is often used as a "generic term for roof structures." *Id.* at 31, 86. Multiple other witnesses also testified that "truss" and "rafter" are used interchangeably. *See, e.g., id.* at 163-64 (testimony of Richard Barr); Tr. Vol. III p. 6 (testimony of Nathan Grimes).

[32] It is also undisputed that pre-engineered, pre-manufactured trusses would not have been compatible with the rest of the house and that the installation of such trusses would have required the removal of the entire roof structure "down to the walls," not just the damaged portions of the back of the roof. Tr. Vol. II p. 243. The contract, however, provided that Haus was to "[r]emove and rebuild *back* section of roof", not the entire roof. Ex. Vol. IV p. 20.

[33] According to Haus, Floyd never mentioned specifically that he wanted pre-engineered, pre-manufactured trusses. Although Floyd testified that he wanted pre-engineered, pre-manufactured trusses all along, Floyd did not raise the issue with Haus until at least late-September 2018. Floyd admitted during his testimony that he did not understand the difference between a truss and a rafter when he entered into the contract; however, he learned the distinction in September 2018.

The trial court found that Floyd's testimony was "entirely incredible and not believable" and that this case "was advanced solely to avoid payment on the terms of a contract." Appellant's App. Vol. II pp. 24-25. The trial court further found that the contract did not require Haus to install "pre-engineered or pre-manufactured trusses." *Id.* We agree. Reading the contract as a whole, the trial court's interpretation of the contract is not clearly erroneous. Accordingly, we cannot say that Haus was the first party to breach the contract when Haus did not install pre-engineering, pre-manufactured trusses.

### IV. Attorney Fees

Next, Floyd challenges the trial court's award of attorney fees to Haus. "We review a trial court's award of attorney's fees for an abuse of discretion." *River Ridge Dev. Auth. v. Outfront Media, LLC*, 146 N.E.3d 906, 912 (Ind. 2020). "An abuse of discretion occurs when the court's decision either clearly contravenes the logic and effect of the facts and circumstances or misinterprets the law." *Id.* "To make this determination, we review any findings of fact for clear error and any legal conclusions de novo." *Id.*

The trial court entered findings of fact and conclusions thereon awarding attorney fees pursuant to Indiana Code Section 34-52-1-1(b), which provides:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

[37] The trial court found that Floyd's testimony was "entirely incredible and not believable" and that the "case was advanced solely to avoid payment on the terms of a contract." Appellant's App. Vol. II pp. 24-25. The trial court also found that Floyd acted in "bad faith" by repeatedly denying that his insurance company paid the claim when the funds had already been paid. *Id.* at 25. Accordingly, the trial court found that Haus was entitled to attorney fees.

[38] On appeal, Floyd argues that "the record is replete with significant issues as it relates to the home improvement contract and the work performed by Haus." Appellant's Br. p. 35. Floyd fails to mention, however, that the claim pursuant to the Home Improvements Contract Act was first presented in his second motion to amend his answer and counterclaim, which the trial court denied. Accordingly, the Home Improvement Contract Act claim was never part of Floyd's counterclaims against Haus. As for significant issues regarding the work performed by Haus, Floyd did not raise issues regarding the trusses until long after the work was complete; the issues raised in the Grimes report were minor; and Floyd repeatedly told Haus that he had not received the insurance funds when, in fact, he was fully paid by the insurance company.

[39] Under these circumstances, we cannot say the trial court abused its discretion when it found Floyd's defense frivolous, unreasonable, or groundless, and in bad faith. Accordingly, the trial court did not abuse its discretion by awarding Haus attorney fees under Indiana Code Section 34-52-1-1(b). *See, e.g., Staff Source, LLC*, 143 N.E.3d at 1011 (holding that the trial court did not abuse its discretion by awarding attorney fees where: "Staff Source's claims regarding breach of the Employment Agreement and tortious interference by Milan, Slobodan, and the Resolve Group with Staff Source's contractual relationship and business relationship with Wallace were frivolous, unreasonable, or groundless").

## Conclusion

[40] The trial court properly denied Floyd's request for a jury trial. Further, the trial court properly found that Floyd, not Haus, breached the contract and properly awarded Haus attorney fees. We affirm.

[41] Affirmed.

Kirsch, J., and Pyle, J., concur.